IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALPHA THIRTEEN, LLC, by Jeffrey Nadel, Officer or Authorized Agent,<br><br>Plaintiff,<br><br>vs.<br><br>OAHU TRANSIT SERVICES, INC.; DOE DEFENDANTS 1-10,<br><br>Defendants. | Civil No. 26-cv-00092-MWJS-RT<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |

## INTRODUCTION

This action arises from a dispute between various entities over who should be held responsible for the cost of a Medicare recipient's medical care from an accident. In February 2013, Medicare beneficiary "C.G." was injured while exiting a bus operated by Oahu Transit Services ("OTS"). MDX Hawaii, which manages benefits for certain Medicare recipients in Hawaiʻi, conditionally paid for C.G.'s medical care arising from that accident. MDX Hawaii did not, however, seek reimbursement from OTS. Instead, MDX Hawaii sold its rights to recover payment to Alpha Thirteen.

Now, through this lawsuit, Alpha Thirteen seeks reimbursement from OTS for MDX Hawaii's conditional payments. And Alpha Thirteen does not merely ask for reimbursement, but instead seeks to recover twice the amount that MDX Hawaii had

paid. In advancing this claim, Alpha Thirteen relies on 42 U.S.C. § 1395y(b)(3)(A), a private cause of action mandating double damages.

The court dismissed an earlier complaint because it failed to allege facts sufficient to support Alpha Thirteen's standing to sue. Alpha Thirteen then filed a Second Amended Complaint (SAC), and OTS another motion to dismiss. In its motion, OTS again argues that Alpa Thirteen still has not adequately alleged standing and that it has failed to state a claim for relief. This time, the court DENIES OTS' motion to dismiss the SAC.

## BACKGROUND

### A. Statutory and Regulatory Background

In 1965, Congress passed the Medicare Act as a "federally funded health insurance program for the elderly and disabled." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1994). The Medicare Act, among other things, outlines who pays for Medicare beneficiaries' medical costs and how those payments are made. Initially, Medicare acted as the "primary payer" for many medical services, meaning it "paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). To control costs, however, Congress passed the Medicare Secondary Payer (MSP) Act in 1980, which

"inverted that system [and] made private insurers covering the same treatment the 'primary' payers and Medicare the 'secondary' payer." *Id.*

The MSP Act was codified at 42 U.S.C. § 1395y(b). In addition to establishing Medicare's status as a secondary payer, the Act outlined when Medicare would *not* pay for services. *Id.* § 1395y(b)(2)(A). Namely, Medicare would not pay for services that a primary payer was responsible for paying. If, however, a primary payer was unwilling or unable to pay for a Medicare beneficiary's medical costs, Medicare could make conditional payments, which were subject to reimbursement. *Id.* § 1395y(b)(2)(B).[1] To ensure that the government could recoup any conditional payments, the MSP Act included a cause of action for the government to recover from a primary payer, *id.* § 1395y(b)(2)(B)(iii). The Act does not merely authorize government lawsuits, however. It also created a private cause of action, which provides:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

*Id.* § 13995y(b)(3)(A).

---

[1] Situations in which a primary plan has not made prompt payment for medical services include scenarios where the responsibility for payment is unclear. That said, the MSP Act clarifies how and when a primary plan's responsibility for payment can be established. Namely, it can be through "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items of services included in a claim against the primary plan or the primary plan's insured, or by other means . . . ." 42 U.S.C. § 1395y(b)(2)(B).

In 1997, Congress again amended the Medicare Act, this time to change how payments were made. Traditionally, the government directly paid medical providers for care rendered to Medicare beneficiaries. But the 1997 amendments created an alternative system of care in which Medicare beneficiaries could receive Medicare benefits through "Medicare Advantage organizations" (MAO)s. MAOs are private insurers, which coordinate and pay for beneficiaries' care, while the government pays a fix amount per enrollee. 42 U.S.C. § 1395w-22. MAOs occasionally contract with "downstream entities," which are local entities that pay for beneficiaries' care.

**B. Factual and Procedural Background**

In February 2023, C.G. was injured while exiting an OTS bus. At the time, C.G. was a Medicare beneficiary and received her benefits through UnitedHealthcare, which is a MAO. Dkt. No. 28, at PageID.773. And so MDX Hawaii, a downstream entity of United Healthcare, made conditional Medicare payments to C.G.'s medical providers to treat the injuries she sustained from the accident. Dkt No. 28, at PageID.774. These payments totaled $8,907.71. *Id.* at PageID.773.

After the accident, C.G. asserted a personal injury claim against OTS seeking to recover, among other things, medical expenses incurred from her accident-related injuries, and OTS settled all of C.G.'s claims against it. *Id.* at PageID.779. But that settlement did not resolve MDX Hawaii's claim for reimbursement of the $8,907.71 that it paid to medical providers. And rather than sue in its own right, MDX Hawaii

assigned its rights to Alpha Thirteen, which now seeks reimbursement from OTS in the form of double damages under 42 U.S.C. § 1395y(b)(3)(A).

The court dismissed Alpha Thirteen's prior complaint—the First Amended Complaint, or "FAC"—for lack of jurisdiction. It reached that conclusion because the pleading "[did] not contain any facts tying C.G.'s alleged injury at the hand of OTS to MDX Hawaii's ultimate assignment of its claims to Alpha Thirteen." Dkt. No. 27, at PageID.767. In other words, what was missing was "any allegation that MDX Hawaii assigned the particular claims arising out of the injury caused by OTS to Alpha Thirteen." *Id.* While Alpha Thirteen pointed to a "Schedule 1" as evidence that MDX Hawaii assigned its right to recover on claims paid out for C.G., that document did not provide a way "to discern which claims, if any, are related to injuries incurred as a result of C.G.'s bus accident, or indeed whether any Patient ID corresponds to C.G. at all." *Id.* at PageID.768. Thus, as the court observed, "neither the First Amended Complaint nor Exhibit 1 alleges that any Patient ID listed on Schedule 1 is in fact C.G." *Id.* On that ground, the court granted OTS' motion to dismiss and did not address any of the other contentions OTS made in its motion to dismiss.

Alpha Thirteen has since submitted a SAC, and OTS has moved to dismiss it, again arguing that Alpha Thirteen lacks standing and failed to state a claim for relief under 42 U.S.C. § 1395y(b)(3)(A). OTS opposes the motion. The court finds the motion suitable for disposition without a hearing, as authorized by Local Rule 7.1(c).

## DISCUSSION

### A. Alpha Thirteen Has Adequately Alleged that it Has Standing

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a matter for lack of the court's subject matter jurisdiction. OTS does so here. It argues that Alpha Thirteen's SAC fails to plead facts giving rise to subject matter jurisdiction because it has not alleged sufficient facts to establish its standing to sue.

To establish standing, a plaintiff must show (1) that it has suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). Importantly, even an assignee of a claim can establish standing to assert the injury suffered by the assignor. To do so, the assignee must show that "(1) its ultimate assignor suffered an injury-in-fact, and (2) the assignor's claim arising from that injury was validly assigned." *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, Civil No. 17-02522, 2022 WL 1690151, at *4 (C.D. Cal. May 25, 2022) (cleaned up). Thus, as explained in the court's prior motion to dismiss order, Alpha Thirteen's obligation is to allege facts sufficient to show that MDX Hawaii would have had standing in its own right, and that it "validly assigned its right to recover on the claims arising out of that injury." Dkt. No. 27, at PageID.767.

Alpha Thirteen's SAC has shown that MDX Hawaii would have had the right to sue on its own. First, the facts alleged in the SAC establish that MDX Hawaii suffered

an injury-in-fact when it made payments on behalf of Medicare enrollee C.G. *See* Dkt. No. 28, at PageID.781–82; Dkt. No. 34, at PageID.1364–1483. Second, these injuries are fairly traceable to OTS. Unlike in the FAC, which the court previously determined lacked the "factual connective tissue" linking "C.G.'s alleged injury at the hands of OTS to MDX Hawaii's ultimate assignment of its claims to Alpha Thirteen," the SAC cures these defects. Dkt. No. 28, at PageID.783; Dkt. No. 25, at PageID.1486–88. In its SAC, Alpha Thirteen lists only entries related to the accident-related injuries that MDX Hawaii paid on behalf of C.G. Dkt. No. 28, at PageID.783; Dkt. No. 35, at PageID.1486-88.[2] And third, the injury is redressable by a favorable decision through the requested compensation. Dkt. No. 28, at PageID.787. Thus, the court concludes that the facts alleged in the SAC adequately establish standing.

The SAC also sufficiently alleges that MDX Hawaii validly assigned its claim to Alpha Thirteen. The unredacted SAC identifies the alleged Assignor as "MDX Hawaii," the alleged Assignee as "Alpha Thirteen," and the date of the assignment. It also describes the essential terms of the assignment agreements, including that "Assignor hereby irrevocably and absolutely sells, assigns, grants, conveys, transfers, and sets over

---

[2] OTS argues that the SAC does not adequately allege that the entries truly are related to the injuries C.G. suffered from the OTS incident. But in reviewing a motion to dismiss, a court draws all reasonable inferences in the non-movant's favor. *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). It is an appropriate inference, under these circumstances, that the entries Alpha Thirteen cites are related to C.G.'s injuries from the OTS incident.

to Assignee . . . all Legal Claims arising from or related to Assignor's payment of the Identified Medical Claims." Dkt. No. 34, at PageID.1261. In light of these factual allegations in the SAC, the court concludes that Alpha Thirteen pleads sufficient facts giving rise to subject matter jurisdiction. *Accord MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 17-cv-02559, 2018 WL 2106467, at *8 (C.D. Cal. May 7, 2018) (holding that pleadings were sufficient where they identified the alleged assignors, assignees, date of the assignments, and essential terms of the agreement).

Despite this, OTS argues that a few critical defects persist. OTS's first argument is that the assignment between MDX Hawaii and Alpha Thirteen is invalid because it involves the same signor on behalf of both parties. Dkt. No. 36-1, at PageID.1512. But it is a well-accepted principle of corporate law that a single individual can sign the same agreement for distinct legal entities without rendering a contract invalid. *See, e.g.*, *Tilton v. Stila Styles, LLC*, C.A. No. N23C-02-088, 2025 WL 2355090 (Del. Super. Ct. July 22, 2025), at *9 n.126 (recognizing, under Delaware corporate law, "the separate legal existence of two distinct entities—even where represented by the same natural person" (cleaned up)).

OTS's second argument shifts gears, attacking not the assignment from MDX Hawaii to Alpha Thirteen, but instead the assignment between UnitedHealthcare and MDX Hawaii. Dkt. No. 46-1, at PageID.1508; Dkt. No. 40, at PageID.1552. OTS argues that the SAC fails to show that UnitedHealthcare's assignment to MDX Hawaii was

valid, and that Alpha Thirteen would need to provide a "Health Services Agreement" to determine "what, if anything, Untied allegedly assigned to MDX Hawaii." Dkt. No. 40, at PageID.1508. But OTS demands more than standing analysis requires.

The validity of the assignment from MDX Hawaii to Alpha Thirteen is indeed critical to standing, but that is only because Alpha Thirteen did not suffer any injury in fact of its own and therefore must rely on the assigned injury in fact from MDX Hawaii. The same is not true for MDX Hawaii. If it turns out that the assignment from UnitedHealthcare to MDX Hawaii was not valid—if MDX Hawaii did not have all of its paperwork in order before it paid medical providers for the care they gave C.G.—that paperwork disorder could conceivably weigh on what, if anything, MDX Hawaii (and now Alpha Thirteen) should be entitled to recover on the merits. But it does not change the fact that MDX Hawaii suffered an injury in fact: a payment in the amount of $8,907.71. That is to say, any problems with the assignment from UnitedHealthcare to MDX Hawaii does not change the fact that MDX Hawaii had standing to sue in its own right. And because Alpha Thirteen is MDX Hawaii's assignee, the only remaining question for standing purposes is whether MDX Hawaii's assignment to Alpha Thirteen was valid. For the reasons discussed above, the SAC adequately alleges that it was.

Because the SAC adequately alleges that Alpha Thirteen has standing to sue, OTS's motion to dismiss the complaint on standing grounds is DENIED.

### B. Alpha Thirteen Has Stated a Claim For Relief Under Rule 12(b)(6)

OTS separately moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, under which a party may seek dismissal for the complaint's failure to state a claim. In assessing whether to grant the motion, the court must determine whether the plaintiff has pled enough factual detail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* The court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (cleaned up).

OTS argues that the double-damages cause of action 42 U.S.C. § 1395y(b)(3)(A) is inapplicable here, because the statute's "text and structure . . . do not provide a[] MAO—or, by extension, a downstream entity or remote assignee—with the private double-damages remedy Plaintiff asserts." Dkt. No. 36-1, at PageID.1514.

This issue is one of first impression in the Ninth Circuit, but all other circuits to have interpreted the statute—the Second, Third, and Eleventh Circuits—have rejected the position OTS advances here.[3] In *In re Avandia Marketing, Sales Practices and Products*

---

[3] Although the Ninth Circuit has not yet opined on whether the MSP Act allows MAOs and downstream entities to rely on the double-damages provision, it has interpreted the meaning of the provision in other contexts. In *DaVita, Inc. v. Virginia*

*Liability Litigation*, the Third Circuit determined that "[t]he language of the MSP private cause of action is broad and unrestricted and therefore allows any private plaintiff with standing to bring an action." 685 F.3d 353, 367 (3d. Cir. 2012). The Eleventh Circuit relied on a similar reasoning, concluding that it saw "no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations." *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2022). And the Second Circuit is in accord. *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 73 (2d Cir. 2022) (agreeing with and quoting from the Third and Eleventh Circuits' decisions and observing that the provision "provides no limitation on which private actors may sue a primary plan that fails to provide reimbursement").

Because courts "generally 'decline to create a circuit split unless there is a compelling reason to do so,'" *In re Comm. Clinic of Maui Data Breach Litig.*, Civ. No. 24-00431, 2025 WL 1863106, at *10 (D. Haw. July 7, 2025) (quoting *Padilla-Rameriz v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017)), the court's task here is to determine whether any such reason exists here.

---

*Mason Memorial Hospital*, the Ninth Circuit ruled on the question of whether § 1395y(b)(3)(A) "require[d] payment by Medicare as a prerequisite to suit." 981 F.3d 679, 692 (9th Cir. 2020). It held that it did not. But the Ninth Circuit left unanswered the question currently before this court, its holding is in no way inconsistent with the decisions of the Second, Third, and Eleventh Circuits that the statute extends the double-damages private cause of action remedy to MAOs.

Granted, the cases decided by the Second, Third, and Eleventh Circuits concerned MAOs themselves as opposed to downstream entities. But the court sees no reason to treat downstream entities differently from MAOs, especially if downstream entities ultimately bear the financial responsibility for Medicare beneficiaries' medical costs. *See MAO-MSO Recovery II, LLC v. Mercury Gen.*, Case No. 17-02525, 2018 WL 3357493, at *7 (C.D. Cal. May 23, 2018) ("[T]he first-tier and downstream entities would suffer the same injury as MAOs when a primary payer failed to pay or reimburse them."). And, indeed, OTS itself frames the argument as whether the Act authorizes "a[] MAO—or, by extension, a downstream entity or remote assignee—with the private double-damages remedy," Dkt. No. 36-1, at PageID.1514, thus acknowledging that there is no reason to distinguish, for these purposes, MAOs from downstream entities. So OTS's argument is, in effect, an invitation to reject the position that all courts of appeals to consider the question have taken.

The court sees no reason to depart from the growing consensus among the courts of appeals. As the Second, Third, and Eleventh Circuits all have recognized, the text of § 1395y(b)(3)(A) is as broad as it is plain. On its face, the open-ended language does not preclude MAOs or downstream entities from asserting the double-damages cause of action. The statute instructs that it creates "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate

reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). These paragraphs outline when an entity that covered the costs of medical services should be reimbursed for those payments. In particular, Paragraph (1) establishes requirements for primary group health plans. *Id.* § 1395y(b)(1). And Paragraph (2)(A) bars payment by Medicare when "(i) payment has been made, or can reasonably be expected to be made . . . as required under paragraph (1), or (ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance)." *Id.* § 1395y(b)(2)(A).

Nothing in the statute suggests that MAOs and their downstream entities are precluded from the private right of action double-damages provision. Indeed, the provision may be one of the only ways for MAOs to seek recovery from a primary plan once it makes a conditional payment. *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2022 WL 1690151, at *10 (C.D. Cal. May 25, 2022) (explaining that if a MAO makes "a conditional payment," it must rely on § 1395y(b)(3)(A) "to seek reimbursement from the primary payer who should have made payment in the first place (quoting *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 872 (7th Cir. 2021)).

OTS nonetheless contends that a narrow reading of the statute is in line with the structure of the statute, which addresses MAOs in another section. True, § 1395w-

22(a)(4) provides that a MAO may, "under circumstances in which Medicare payment is made secondary pursuant to § 1395y(b)(2) . . . charge or authorize the provider of such services to charge" a primary payer or an individual who has received payment from a primary payer. 42 U.S.C. § 1395w-22(a)(4). And because Congress has created a separate avenue for MAOs to seek payment from primary payers, OTS argues, Congress must not have authorized MAOs to be able to bring suit under the double damages provision. *See* Dkt. No. 36-1, at PageID.1515.

One problem with OTS's argument is that it clashes with Ninth Circuit precedent: to the extent a MAO-specific provision exists for recovering past payments, the Ninth Circuit has suggested that it does not lend itself to an independent cause of action. In *Parra v. PacifiCare of Arizona, Inc.*, the Ninth Circuit held that while § 1395w-22(a)(4) "allows recovery from a primary plan that refuses to reimburse the MAO for payments made on behalf of a participant," it does not create a private right of action. 715 F.3d 1146, 1154 (9th Cir. 2013). Instead, it "simply allows [a MAO] to provide via its contracts that its insurance is secondary to other available plans" and to bring a contracts claim to recoup those costs. *Id.*; *see also id.* ("In the end, the MAO's claim thus arises by virtue of its decision to include provisions allowing such recovery in its contract with plan participants."). Hence, permitting MAOs to assert a double-damages cause of action under § 1395y(b)(3)(A) would not, as OTS argues, "substantially diminish the independent work performed by Congress' separate Medicare Advantage

provision." Dkt. No. 36-1, at PageID.1515. In fact, excluding MAOs from availing themselves of § 1395y(b)(3)(A) would run contrary to regulations, which provide that MAOs "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the [Medicare Secondary Payer] regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108(f).

To be sure, the Ninth Circuit references this very regulation to support its holding that the MAO statute § 1395w-22(a)(4) does not itself create a federal cause of action for MAOs. *Parra*, 715 F.3d at 1154. But the court referenced that line in interpreting whether the MAO statute created a private right of action, not in interpreting whether the MSP Act's enforcement provision § 1395y(b)(3)(A) could be asserted by MAOs. *Id.* The distinction, while fine, is significant. The former goes to whether a statute should be interpreted as creating a private cause of action; the latter, which is already recognized as a cause of action, goes to whether that cause of action is open to certain actors. And insofar as the *Parra* court's statements could be construed to foreclose MAOs from the double-damages private cause of action, any ambiguity is removed by its clarification that it was not resolving whether § 1395y(b)(3)(A) "provided a MAO a private right of action against third-party tortfeasors for medical expenses advanced on behalf of plan participants." *Id.* at 1154.

The bottom line is that the MSP Act is best read as allowing any party—including a MAO or downstream entity—to invoke the double-damages cause of action

if they have standing to sue. They might have standing because they paid for medical treatment. Or, as in this case, they might have standing because a party with standing validly assigned their claim.

Having concluded that Alpha Thirteen is not barred from relying on the MSP Act, the only remaining question is whether the SAC alleges sufficient facts to plead a cause of action under that Act. The court concludes that it does. Alpha Thirteen has pled sufficient facts making its claim to relief plausible. Accepting the facts asserted in the SAC as true, it established that assignor MDX Hawaii paid for C.G.'s medical care; that those medical care costs arose from the injury involving OTS; that OTS settled a personal injury claim with C.G., thus becoming a primary payer; and that MDX Hawaii validly assigned its rights to Alpha Thirteen. *See* Dkt. Nos. 35, at PageID.1486–88; 28-1, at PageID.773; 788–791. Although OTS identifies ways in which the SAC could be more detailed, Dkt. No. 40, at PageID.1561–62, none of those absent details warrant its dismissal, especially once all reasonable inferences are drawn in Alpha Thirteen's favor. *Retail Prop. Trust*, 768 F.3d at 945. OTS' motion to dismiss the SAC on Rule 12(b)(6) grounds is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is DENIED.

IT IS SO ORDERED.

DATED: October 30, 2026, at Honolulu, Hawaiʻi.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

*Alpha Thirteen, LLC v. Oahu Trans. Servs., Inc.*; Civil No. 26-00092-MWJS-RT; ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT